IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BEDALE G. HICKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-0114 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff BEDALE G. HICKS brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security benefits (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

### I.
### THE RECORD

Plaintiff filed an application for SSI benefits on February 15, 2002, alleging she became disabled on August 21, 1984 (Tr. 93-95; 109), and unable to work due to impairments resulting from hepatitis A, B and C, cysts in her right breast, a 1976 gunshot wound in both legs, lower back pain, and muscle problems. (Tr. 100). Plaintiff alleged her impairments caused cramps, pain

throughout her body, and spasms. Plaintiff alleged she was limited in what she is able to do because of extreme pain in the lower part of her back and in her legs, muscles spasms, and pain in her joints. (Tr. 121).

At the time she filed her application, plaintiff was 51-years-old. The highest grade of school plaintiff completed was the 9th grade. (Tr. 106). Plaintiff identified being a housekeeper, a live-in companion, and a car detailer as jobs she had held in the past 15 years. She had also received training in cooking. (Tr. 101, 106, 113-30).

The Social Security Administration denied benefits initially and upon reconsideration. (Tr. 36-37; 52-57; 60-62). An administrative hearing was held before an Administrative Law Judge (ALJ) on April 21, 2003. (Tr. 421-450). On July 23, 2003, the ALJ rendered an unfavorable decision, concluding plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of the decision. (Tr. 38-48). The Appeals Council remanded the case on January 23, 2004 (Tr. 49-51), and an administrative hearing was held before an ALJ on June 16, 20004. (391-418). A vocational expert was present at the hearing but did not testify. Prior to the hearing, plaintiff's counsel submitted written interrogatories to be propounded to the vocational expert, an examining physician and two (2) nonexamining state agency physicians. The ALJ denied plaintiff's request to submit interrogatories to each. The ALJ explained he gave no substantial weight to the opinion of the examining physician, who only gave plaintiff a cursory examination one time, or to the opinions of the nonexamining physicians as they are not entitled to substantial weight. The ALJ noted plaintiff had the opportunity to call the vocational expert, who was present at the hearing, to testify and, thus, the opportunity to pose the questions presented in the written interrogatories, but did not do so.

Plaintiff was represented by counsel at the hearing. At the hearing, plaintiff testified her main problem was pain in her low back and legs which had progressed to the degree that she had been falling down. (Tr. 399). Plaintiff testified she felt pain all the time, but explained she had learned how to deal with it. (Tr. 402). Plaintiff stated that some days, she has to constantly take medication to alleviate the pain. Plaintiff testified physical exertion makes her pain worse, but that she can stand for possibly 30 minutes, possibly walk a block, and probably pick up a 25-pound object, but not repetitively. (Tr. 403-04). Plaintiff opined she could not sit at a desk or bench and reach over or stoop to work with her hands because it would affect her back. She did not believe she could alternate sitting and standing at a job, explaining she sometimes has to lie down during the day. (Tr. 405). Plaintiff estimated the longest period of time she could do any kind of physical work would probably be just over an hour. (Tr. 406). Plaintiff advised she had told her doctor of her problems and he had advised her to try certain exercises. Plaintiff related her doctors had given her medicine for her pain and that it helped some. (Tr. 408). Plaintiff advised she complained to her treating physicians about her back pain every time she went to the doctor, sometimes calling the doctor every 20 minutes. (Tr. 408-09). Plaintiff advised she can work around the house for about 10-15 minutes before stopping for a break, and can do so for about 2-3 hours. (Tr. 409-10). She also advised she has to lie down for 45 minutes to an hour each day. Plaintiff also complained of her ankles, legs and heels. (Tr. 411). Plaintiff advised she tried to do some house work for friends (Tr. 416)

On August 13, 2004, the ALJ rendered an unfavorable decision, concluding plaintiff was not under a disability as defined in the Social Security Act, at any time through the date of the decision. (Tr. 12-21). In his evaluation of the evidence, the ALJ noted plaintiff was 53-years-old

with a 9th grade education and no vocationally relevant past work experience as her earnings as a housekeeper after her alleged onset date were not at the level of substantial gainful activity. The ALJ noted plaintiff had spent most of her adult life in prison. The ALJ reiterated that plaintiff alleged she became disabled on August 21, 1984 due to Hepatitis A, B, and C, cysts in her right breast, gunshot wounds to both legs in 1976, lower back pain, and muscle problems. (Tr. 12).

The ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13). The ALJ found plaintiff has medically determinable impairments of degenerative disc disease of the lumbar spine, with chronic low back pain, and hypertension, and that such were "severe" impairments under the Act because each impairment had more than a minimal effect on her ability to perform basic work activities. The ALJ found, however, that plaintiff's medically determinable impairments of anxiety, antisocial personality disorder, mildly below normal intellectual functioning, and Hepatitis C were not "severe" impairments under the Act, whether considered separately or in combination with any other impairments.

The ALJ noted prison medical records for 1994 through 2000 revealed almost no mention of any complaints of back or joint pain, but that plaintiff was prescribed Naproxen during much of this period. On one occasion, the records indicated the medication was for back and leg pain. After her release from prison, plaintiff advised her examining physician that she took Naprosyn for leg stiffness and joint pain in her legs, which got very stiff at nighttime, and that she sometimes had muscle spasms in her calves at night. Plaintiff's physician found no musculoskeletal abnormalities on examination, but switched plaintiff to Vioxx for leg stiffness. On a subsequent visit, plaintiff advised the physician she had had some low pack pain for year but that at that time it was tolerable, although some days it was quite uncomfortable. Examination again revealed no abnormalities. The

ALJ noted that at a consultative examination on June 20, 2002, plaintiff advised she had experienced low back and left hip pain since the early 1990s. Examination revealed no abnormalities, but x-rays of her spine revealed severe degenerative disease at the L4-L5 disc space with milder degenerative change at the L3-L4 disc space. (Tr. 16).

The ALJ found plaintiff's Hepatitis C did not require treatment, that her hypertension was well controlled with medication, and that her breast cysts condition was resolved. The ALJ also discussed the mild nature and limited effect of any of plaintiff's psychological impairments.

The ALJ found the evidence of record did not establish the existence of an impairment or combination of impairments meeting or equaling the severity of any impairment described in the Listing of Impairments under Appendix 1, Subpart P, Part 404. The ALJ specifically compared plaintiff's lumbrosacral spine problems with the severity criteria in Listing 1.04 which describes disorders of the spine. The ALJ compared plaintiff's hypertension with the severity criteria in Listing 4.03 which describes hypertensive cardiovascular disease. (Tr. 17).

The ALJ determined plaintiff had the residual functional capacity (RFC) to perform a wide range of light exertional level work, with limits of no more than occasional stooping and crouching, and no exposure to heights or workplace hazards. (Tr. 17, 20). The ALJ explained that in making the RFC determination he considered any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations. Specifically, the ALJ noted plaintiff's primary care physician had not indicated plaintiff's impairments cause any specific functional limitations. He further noted that the physical limitations placed on plaintiff in prison from 1997 to 2000 were generally consistent with the ability to perform light work.

The ALJ noted he evaluated plaintiff's symptoms, including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence as well as other evidence. The ALJ found such evidence did not support a finding that plaintiff's subjective symptoms were of such an intensity or persistence to prevent a wide range of light work. (Tr. 18). The ALJ noted plaintiff had not required any psychiatric treatment or medications. He also found the medical records did not show plaintiff was consistently reporting back or leg pain to her physician, that she had been prescribed pain medication only intermittently, and that she had not required hospitalization, emergency room treatment, surgery, physical therapy, or injections for back, leg or musculoskeletal pain. The ALJ also noted plaintiff's testimony indicated she performs a broad range of daily activities which would not be inconsistent with the performance of light work activity. The ALJ further noted plaintiff told a consultative physician in June 2002 that she could usually walk 2 to 3 miles without any problem. Based on this evidence, the ALJ found plaintiff's testimony as to the extent, intensity, and duration of subjective symptoms and resulting limitations to be credible only to the extent that she is limited to light exertional level work, which requires no more than occasional stooping and crouching and does not require exposure to heights or workplace hazards.

The ALJ noted that as plaintiff had no past relevant work (PRW), the burden shifted to the Administration to show there are other jobs existing in significant numbers in the national economy that plaintiff can perform, consistent with her RFC, age, education and work experience. (Tr. 18). The ALJ noted plaintiff, at 53 years of age, was considered an individual closely approaching advanced age, had a limited education, and no transferable skills as past relevant work had not been performed during the relevant period. (Tr. 19). The ALJ noted the Medical-Vocational Guidelines

are used as a framework for the decision when the plaintiff cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations. He further noted that when all of the criteria of a Rule are met, the existence of occupations in the national economy is met by administrative notice.

The ALJ stated light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. The ALJ found that because plaintiff has the exertional capacity to perform substantially all of the requirements of light work, and considering plaintiff's age, education and work experience, that a finding of "not disabled" was supported by application of Medical-Vocational Rule 202.10. The ALJ thus concluded there are jobs, existing in significant numbers in the national economy, which plaintiff is able to perform. The ALJ further concluded plaintiff retained the capacity to adjust to work that exists in significant numbers in the national economy. The ALJ found plaintiff was not under a disability within the meaning of the Act at any time through the date of his decision.

In his findings, the ALJ clarified that based on an exertional capacity for light work, and plaintiff's age, education and work experience, Rule 202.10 would direct a conclusion of "not disabled." He further clarified that plaintiff's capacity for light work was substantially intact and had not been compromised by any nonexertional limitations and, thus, using Rule 202.10 as a framework for decision making, plaintiff was found not disabled.

On February 18, 2005, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 6-9), rendering the ALJ's decision the final decision of the defendant Commissioner. Plaintiff now seeks judicial review.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## ISSUES

Plaintiff was found not disabled at Step Five of the five-step sequential analysis. Therefore,

this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting the finding that plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies, and whether the proper legal standards were applied in making this determination. Plaintiff appears to present the following issues:

1. The ALJ's finding that plaintiff has the RFC for light work is not supported by substantial evidence because plaintiff met her burden of proving disabling pain which prevents her from performing light work; and

2. The ALJ improperly used the medical-vocational guidelines to direct a finding of not disabled.

IV.
MERITS

A.
Pain

Plaintiff argues she met her burden of proving "severe and intractable" pain which is "greatly aggravated by any physical exertion" and disabling pain which prevents her from performing light work. Plaintiff appears to argue she conclusively demonstrated the disabling nature of her pain by way of a June 24, 2002 diagnostic imaging report which indicates she has severe degenerative disk disease. *See* Tr. 267. Plaintiff maintains this report is "totally uncontroverted by any medical finding or opinion to the contrary" and that the ALJ did not cite any evidence contrary to this finding. Plaintiff concludes that since this report was not rebutted, she proved her pain is disabling and, therefore, the ALJ's finding that plaintiff has the RFC for light work is not supported by substantial evidence.

Had the ALJ had accepted as credible all of plaintiff's testimony and statements regarding her ability to function, plaintiff's argument would probably prevail. The ALJ, however, did not so

find and, instead, determined plaintiff's allegations of "severe and intractable" pain were not credible to the extent alleged. In making this determination, the ALJ noted plaintiff indicated to her treating physician that she had some lower back pain for years, but that most of the time it was tolerable, although uncomfortable on some days. Physical examination did not reveal any radicular pain, weakness or numbness in her legs.

Nor do the records reveal plaintiff was ever placed on any work restrictions after her release from prison. In prison, plaintiff was placed on restrictions of "limited standing, no walking more than 200 yards, no lifting over 25 pounds, and no climbing."[1] These restrictions did not restrict plaintiff from all work and allowed work consistent with the ALJ's finding that plaintiff maintains the RFC for a restricted range of light work. It is also noted these restrictions were not continued by any physician after plaintiff's release from prison in 2000. Further, plaintiff's testimony as to her extreme limitations due to pain appear to contradict the findings made during physical examination that she demonstrated normal sensory and movement. It is within the ALJ's discretion to determine the debilitating nature of pain and such determination is entitled to considerable deference. *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). Here, the ALJ found plaintiff's allegations of disabling pain were not credible to the extent alleged and concluded plaintiff was not precluded, by her pain, from performing light work. The undersigned does not find, contrary to her assertion, that plaintiff has demonstrated she is totally disabled by her pain to the degree necessary to reverse the ALJ's decision. Plaintiff presented her own testimony and the diagnostic imaging report indicating severe degenerative disc disease in the lumbar spine. While the diagnostic imaging report establishes plaintiff does have an impairment that could reasonably be expected to

---

[1] Plaintiff requested the climbing restriction be removed but such request was denied.

produce pain, there are no additional comments or findings from a medical professional. The finding that her impairment could reasonably be expected to produce pain does not mandate a determination that the intensity, persistence or functionally limiting effects of her pain is disabling. That determination remains for the ALJ and, as stated above, is entitled to deference. Plaintiff's testimony conflicts with the findings from her physical examinations. These subjective complaints were found by the ALJ to be credible only to the extent that she is limited to light work. Plaintiff has failed to demonstrate her degenerative disc disease prevents her from performing the requirements of light work. Considering the deference to which the ALJ's determination of the disabling nature of pain is entitled, there is substantial evidence to support the ALJ's finding that plaintiff has the RFC to perform light work.

### B.
### Use of Guidelines

Plaintiff next argues the ALJ improperly used the Grids in determining she was not disabled. Specifically, plaintiff maintains use of the Grids was prohibited in this case because plaintiff has mental and emotional problems, as well as vision problems, that compromise her RFC. Plaintiff thus concludes the ALJ's proof of jobs in significant numbers fails and, consequently, the decision is not supported by substantial evidence. Plaintiff did not allege any of these impairments in her application for benefits as disabling. Further, the record indicates plaintiff has 20/50 vision, but does not wear glasses. (Tr. 264). The record does not indicate if plaintiff's vision can be corrected by corrective lenses, nor does the record indicate plaintiff's visual impairment prohibits work with large objects or renders her unable to avoid ordinary hazards in a workplace. *See* SSR 85-15. Plaintiff has not shown her vision impairment precluded using the medical-vocational guidelines.

A consultative psychological evaluation of plaintiff was conducted on May 28, 2002. (Tr.

255-64). Plaintiff presented with a vocational disability complaint of cardiovascular disease, and reported no other diagnosed disabilities, injuries, or health problems to the examiner. (Tr. 256). The examiner noted plaintiff was able to sustain individual attention to task for over 2 hours without taking a break. The examiner found plaintiff had IQs mildly below the normal range, placing plaintiff's functioning level within the mildly below normal borderline intellectual range. (Tr. 257). The examiner found plaintiff's level of performance in traditional formal academic areas was deficient given her intellectual ability.

Plaintiff did not experience any psychological decompensation and although experiencing significant affective distress to a mild degree characterized by chronic worry and tension, opined that "[o]nce she manages to obtain and maintain gainful employment her anxiety symptoms will subside." (Tr. 258). The examiner also found plaintiff's antisocial qualities continue to alleviate with her maturation, and that vocational counseling and career guidance would prove most beneficial. The examiner noted that, vocationally, plaintiff preferred hands on realistic work tasks and activities, and that plaintiff's transferable occupational skills included strong abstract visual spatial reasoning ability, strong comprehension of complex audio verbal information, good nonverbal temporal sequencing skill, and fair abstract constructional ability and arithmetic achievement. (*Id.*). Given plaintiff's request for assistance in obtaining job training with work placement in an occupation which accommodated her physical exertion restrictions due to a cardiovascular condition, the examiner opined plaintiff would achieve, "in hands on technical education level programs, or in similar level, on the job training with work placement." (Tr. 259). The examiner found plaintiff's occupational goal of low physical exertion work was feasible.

As detailed above, the ALJ discussed plaintiff's consultative psychological evaluation in his

decision. The ALJ specifically noted the finding that plaintiff was able to sustain attention to tasks for over two hours without taking a break. The ALJ noted the opinion that "once [plaintiff] manage[d] to obtain and maintain gainful employment her anxiety symptoms [would] subside, (Tr. 16, 256), and properly considered the psychiatrist's encouragement for plaintiff to work. The ALJ further noted the psychiatric opinion that plaintiff could maintain concentration, persistence, and pace on tasks for at least two (2) hours at a time, as well as the doctor's opinion that plaintiff's mental impairments would subside once she began work. The ALJ found plaintiff's mental impairments were not severe and did not significantly limit her ability to perform basic work activities. (Tr. 15).

An ALJ is entitled to rely on the grids, without expert vocational testimony, when a claimant suffers only from exertional impairments, OR the ALJ determines the claimant's non-exertional impairments do not significantly affect the claimant's residual functional capacity. *Fraga, v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If an ALJ determines a claimant's non-exertional impairments significantly affect the claimant's RFC, the ALJ may still use the grids as a framework for considering how much the claimant's work capability is further diminished by the non-exertional limitations.

Here, as previously noted, the ALJ found plaintiff's mental impairments were not severe and did not significantly limit her ability to perform basic work activities. (Tr. 15). The ALJ also found the Grids <u>would direct</u> a conclusion of not disabled, but that as plaintiff's capacity for light work was substantially intact and had not been compromised by any non-exertional limitations, used the Grids <u>as a framework</u> for his decision making to find the plaintiff is not disabled. (Tr. 20).

The record does not contain any evidence reflecting plaintiff cannot understand, carry out,

decision. The ALJ specifically noted the finding that plaintiff was able to sustain attention to tasks for over two hours without taking a break. The ALJ noted the opinion that "once [plaintiff] manage[d] to obtain and maintain gainful employment her anxiety symptoms [would] subside, (Tr. 16, 256), and properly considered the psychiatrist's encouragement for plaintiff to work. The ALJ further noted the psychiatric opinion that plaintiff could maintain concentration, persistence, and pace on tasks for at least two (2) hours at a time, as well as the doctor's opinion that plaintiff's mental impairments would subside once she began work. The ALJ found plaintiff's mental impairments were not severe and did not significantly limit her ability to perform basic work activities. (Tr. 15).

An ALJ is entitled to rely on the grids, without expert vocational testimony, when a claimant suffers only from exertional impairments, OR the ALJ determines the claimant's non-exertional impairments do not significantly affect the claimant's residual functional capacity. *Fraga, v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If an ALJ determines a claimant's non-exertional impairments significantly affect the claimant's RFC, the ALJ may still use the grids as a framework for considering how much the claimant's work capability is further diminished by the non-exertional limitations.

Here, as previously noted, the ALJ found plaintiff's mental impairments were not severe and did not significantly limit her ability to perform basic work activities. (Tr. 15). The ALJ also found the Grids <u>would direct</u> a conclusion of not disabled, but that as plaintiff's capacity for light work was substantially intact and had not been compromised by any non-exertional limitations, used the Grids <u>as a framework</u> for his decision making to find the plaintiff is not disabled. (Tr. 20).

The record does not contain any evidence reflecting plaintiff cannot understand, carry out,

and remember simple instructions, respond appropriately to supervision, coworkers and usual work situations, or deal with changes in a routine work setting. There is no evidence in the record indicating plaintiff's mental impairments cause a substantial loss of her work abilities, or that her mental impairments significantly erode the potential occupational base. *Cf*. SSR 85-15. Plaintiff suffers only from exertional impairments and non-exertional impairments which do not significantly affect plaintiff's RFC. Consequently, the ALJ was entitled to rely exclusively on the Grid in determining whether there was other work available that plaintiff could perform.

By using the Grid, the ALJ met his burden of proving there were a significant number of other jobs in the economy plaintiff could perform by relying upon the Grids. *See Perez v. Heckler*, 777 F.2d 298, 300-01 (5th Cir. 1985). The "existence of jobs in the national economy is reflected in the 'decisions' shown in the [Grid] rules." 20 C.F.R. Pt. 404, Subpt. P, App. 2 200.00(b). The ALJ was entitled to rely exclusively on the Grids in determining there was other work plaintiff could perform after finding plaintiff suffers from only exertional impairments, to wit: degenerative disc disease of the lumbosacral spine and hypertension, and non-exertional impairments that do not significantly affect her RFC. Plaintiff has not argued the Grids were not applicable to plaintiff for any other reasons, nor has she argued use of the Grids was precluded by the ALJ's findings, or that the Grid rule utilized did not direct a conclusion of "not disabled." Plaintiff's second ground alleging reversible error is without merit and should be denied.

V.
CONCLUSION

The ALJ's findings have sufficient evidentiary support and the determination of not disabled is not reversible. No reversible error has been shown.

# VI.
# RECOMMENDATION

It is the opinion and recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of SSI benefits be AFFIRMED.

# VII.
# INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 8th day of September 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States

District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).